UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| NORMAN HANSMEYER and WAYNE HANSMEYER, | \* | CIV 17-4150 |
| Plaintiffs, | \* | |
| vs. | \* | MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS |
| JEFF SHOTKOSKI and HERITAGE BUILDERS, INC., | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Defendants Jeff Shotkoski and Heritage Builders, Inc. ("Heritage") Motion to Dismiss, Doc. 10. In their motion, Defendants ask that the claims in the Amended Complaint be dismissed for several reasons: 1) Heritage is the real party in interest as a plaintiff in a derivative action and inclusion of Heritage as a plaintiff destroys diversity and divests this Court of jurisdiction, requiring dismissal under Rules 12(b)(1) and (b)(7) of the Federal Rules of Civil Procedure; and 2) dismissal of any direct action by Plaintiffs is appropriate under Rule 12(b)(6) for failure to state a claim upon which relief can be granted based upon their lack of standing to bring a direct suit. For the following reasons, Defendants' motion is denied.

## BACKGROUND

Accepting Plaintiffs' allegations as true and giving Plaintiffs the benefit of all reasonable inferences, the Court lays out the following facts in accordance with the pleadings. *See Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (providing the standard for granting a motion to dismiss under Rule 12(b)(6)). In August 2011, Plaintiffs and Shotkoski formed Heritage for the primary purpose of residential real estate development and construction (¶ 7). Specifically, Heritage would buy residential lots, construct homes on those lots, and sell them for a profit (¶ 8). Shotkoski owns 50% of the shares of Heritage and Norman and Wayne Hansmeyer each own 25% of the shares of Heritage (¶ 10). Shotkoski has served as President of Heritage which, pursuant to its bylaws, made

him responsible to "supervise and control all of the business and affairs of the corporation." (¶ 11). As part of those responsibilities, Shotkoski was and currently is responsible for maintaining all financial documents and information relative to Heritage (¶ 12). Shotkoski is also President and owner of both Sundance Group, Inc., ("Sundance") and CCI, Inc. ("CCI"), two other South Dakota corporations involved in residential real estate development and construction (¶¶ 13, 15).

In 2011, at Shotkoski's insistence, Heritage established a $750,000 line of credit, which was eventually converted to a term loan, with Cattle Bank in Lincoln, Nebraska (¶¶ 17, 19). At that time, Shotkoski represented to Plaintiffs that Heritage owned a number of properties (¶ 78). In reliance on this representation, Plaintiffs personally guaranteed the line of credit/loan and pledged their personal assets as the exclusive collateral for the line of credit/loan (¶¶ 76-81). Plaintiffs later learned that these representations were false, when made, as Shotkoski had apparently already transferred such properties to one or more third parties without the consent of the Plaintiffs (¶¶ 24, 35-40, 43, 44-45, 76-81).

Over the last several years, Shotkoski, acting on behalf of Heritage, purchased numerous residential real estate lots for purposes of development using, in part, the funds available through the Cattle Bank line of credit/loan (¶ 20). Shotkoski has, on behalf of Heritage, also contracted for the construction of homes on many of those lots and, in turn, sold such homes (¶ 21). Inexplicably, such operations have resulted in a balance on the Cattle Bank line of credit/loan in excess of $1,100,000 with virtually no return to Plaintiffs (¶ 22). In August 2017, Plaintiffs learned that properties that at one time were owned by Heritage had been transferred to Sundance, CCI, and/or Shotkoski's family members without Plaintiffs' consent (¶¶ 24, 26). Plaintiffs have not been provided sufficient information from Shotkoski or Heritage regarding the financial dealings of Heritage to determine whether sufficient consideration was provided for such transactions (¶ 25).

As shareholders and directors of Heritage, Plaintiffs have, on several occasions, made demand to inspect the corporate accounting and financial records of Heritage including Heritage's most recent financial statements showing in reasonable detail its assets, liabilities, and the results

of its operations (¶ 26). Plaintiffs' efforts, to date, have been blocked by Heritage and Shotkoski (¶ 27).

Beginning in April of 2017, Plaintiffs, through counsel, began demanding formal accountings from Shotkoski and Heritage regarding the company's operations (¶ 28). The demands were made in good faith and with the proper purpose of determining why there seems to be insufficient funds in Heritage to make payments on the Cattle Bank loan (¶ 30). Shotkoski and Heritage authorized the accountant for Heritage to allow inspection of all records relating to Heritage in the possession of Heritage's current accountant (¶ 31). However, the accountant indicated that the information provided to him by Shotkoski and Heritage was incomplete and that he made requests to Shotkoski and Heritage for the missing financial information and documents but they failed to comply (¶¶ 32, 33).

On August 21, 2017, Shotkoski, through counsel, indicated that he "sold" or otherwise transferred numerous properties from Heritage to Sundance (¶ 35). In the August 21 letter, Shotkoski represented that he had issued unsecured promissory notes for the transfer of Heritage's property to Sundance. That was the first time Plaintiffs had ever seen the alleged promissory notes (¶ 36). Plaintiffs did not authorize the sale or transfer of any property from Heritage to Sundance (¶ 37). Still, Shotkoski signed each promissory note for both Heritage and Sundance even though he lacked the authority and right to transfer or sell properties owned by Heritage to Sundance (¶¶ 38, 39). No payment for any of the eight promissory notes has ever been paid to Heritage, even though some of the promissory notes were purportedly executed in 2015 (¶ 42).

Plaintiffs' Amended Complaint contains the following counts:
- Accounting
- Breach of Fiduciary Duties
- Negligence
- Fraudulent Misrepresentation
- Fraudulent Concealment

- Fraudulent Transfer and/or sale
- Negligent Misrepresentation
- Tortious Interference with Business Relationship or Expectancy
- Shareholder Oppression
- Rescission
- Breach of Contract

(Doc. 5.)

## DISCUSSION

**Realignment**

The crux of Defendants' motion to dismiss is that all of Plaintiffs' claims are derivative in nature and Heritage must be realigned as a plaintiff because Plaintiffs have no standing to allege claims that are derivative. Realignment of Heritage as a plaintiff would destroy complete diversity and require dismissal for lack of jurisdiction.[1]

The seminal case on the issue of realignment is *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941), where the Supreme Court established the doctrine of realignment, requiring federal courts to examine the issues in dispute and realign each party as plaintiff or defendant if necessary. In *Chase*, the Supreme Court held, "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.'" *Id.* at 69 (quoting *Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180 (1905)).

---

[1] Defendants Shotkoski and Heritage are citizens of South Dakota. Consequently, the existence of complete diversity (and, thus, of federal jurisdiction) depends on whether Heritage should be aligned as a plaintiff or a defendant. If Heritage is a defendant, complete diversity exists. If Heritage is a plaintiff, there will be South Dakota citizens on opposing sides of the case and, thus, incomplete diversity.

4

Defendants argue that because this is a derivative suit on behalf of the corporation and any recovery will accrue to it, Heritage should be realigned as a plaintiff.[2] In most cases that would be the better view because the majority rule in South Dakota "is that an action to redress injuries to a corporation cannot be maintained by a shareholder on an individual basis but must be brought derivatively." *Landstrom v. Shaver*, 561 N.W.2d 1, 12 (S.D. 1997). However, because of the antagonism between Plaintiffs and Defendants, the Court concludes that the corporation should not be realigned as a plaintiff.

Because a derivative lawsuit brought by a shareholder is "not his own but the corporation's," the corporation "is the real party in interest" and usually properly aligned as a plaintiff. *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522–23 (1947). There is an exception, however, when a corporation's officers or directors are "antagonistic" to the interests of the shareholder plaintiff(s). *Smith v. Sperling*, 354 U.S. 91, 95–96 n. 3 (1957) (citing *Doctor v. Harrington*, 196 U.S. 579, 587 (1905) ("The ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff, but the corporation may be under a control antagonistic to him, and made to act in a way detrimental to his rights.")). To determine whether antagonism exists, the court should look to "the face of the pleadings and the nature of the controversy." *Id.* at 96.

A corporation is generally antagonistic to a shareholder plaintiff where "management is aligned against the stockholder and defends a course of conduct which he attacks." *Smith*, 354 U.S. at 95. Where management "refuses to take action to undo a business transaction or whenever it so solidly approves [of the transaction] that any demand to rescind would be futile," a court should find antagonism. *Id.* at 97. When the corporation is controlled by the defendant officers who are the target of the derivative suit, the corporation should be aligned as a defendant. *See Knop v. Mackall*, 645 F.3d 381, 382-83 (D.C. Cir. 2011).

---

[2] The only claim alleged by Plaintiffs that is arguably direct is the claim that Shotkoski unlawfully denied Plaintiffs access to the corporate records. With that exception, the injuries alleged in the Amended Complaint result from injuries to the corporation.

5

According to the Amended Complaint in the present case, Shotkoski completely controls the operation of Heritage and he has acted wrongfully to devalue the corporation and deprive Plaintiffs an opportunity to examine the corporate records. Under the circumstances alleged in the Amended Complaint, the Court finds antagonism is present and Heritage is appropriately aligned as a party defendant. *See, e.g., Gabriel v. Preble*, 396 F.3d 10 (1st Cir. 2005). Thus complete diversity exists and this Court has jurisdiction. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss, doc. 10, is denied.

Dated this 21st day of June, 2018.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

BY: _____
Deputy